ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| RICHARD COSME DÍAZ<br><br>Recurrido<br><br>v.<br><br>MELANY SANDOVAL DE JESÚS<br><br>Peticionaria | **TA2026CE00354** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Fajardo<br><br>Civil Núm.: RG2023RF00018<br><br>Sobre: Divorcio – Ruptura irreparable, custodia y relaciones paternofiliales |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico a 13 de abril de 2026.

Comparece ante este foro la Sra. Melany Sandoval de Jesús (señora Sandoval o "la peticionaria") y nos solicita que revisemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo, notificada el 7 de enero de 2026. Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* a celebrar la vista de impugnación.

Por los fundamentos expuestos a continuación, **DENEGAMOS** expedir el presente recurso de *certiorari*.

## I.

El caso ante nos tuvo su origen el 16 de febrero de 2023, cuando el Sr. Richard Cosme Díaz (señor Cosme o "el recurrido") presentó una *Demanda* sobre divorcio en contra de la señora Sandoval.[1] En esta, informó que las

---

[1] *Demanda*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

partes durante el matrimonio procrearon a tres (3) hijas. Por ello, solicitó patria potestad fuera compartida y la custodia la ostentara la peticionaria, por él residir fuera de Puerto Rico. No obstante, solicitó se establecieran relaciones filiales. En cuanto a la pensión alimentaria, mencionó que las partes por mutuo acuerdo habían establecido una pensión de $600.00 mensuales.

Luego de varias incidencias procesales, el 1 de abril de 2023, el señor Cosme presentó una *Moción en Solicitud de Relaciones Paternofiliales Provisionales*.[2] Alegó, que al momento no existía una determinación formal sobre custodia, ni un horario fijo de relaciones filiales. Por consiguiente, solicitó se ordenen relaciones paternofiliales provisionales.

El 3 de abril de 2023, la señora Sandoval presentó su *Contestación a Demanda*.[3] En esencia, negó que la patria potestad fuera compartida, debido a que el recurrido reside fuera de Puerto Rico. Asimismo, se opuso a que las menores viajaran a visitar al recurrido, hasta que no se evaluara si estuviesen protegidas y seguras bajo el cuidado de este. Finalmente, presentó una *Reconvención*, en la cual solicitó el caso fuera referido a la Unidad de Trabajo Social para que investigaran las preocupaciones que tenía en cuanto a la seguridad de las menores de ser concedidas las relaciones paternofiliales. A su vez, solicitó se fijara una pensión para las menores según las guías mandatarias para el pago de pensiones en Puerto Rico.

---

[2] *Moción en Solicitud de Relaciones Paternofiliales Provisionales*, entrada núm. 22 en SUMAC.
[3] *Contestación a Demanda*, entrada núm. 27 en SUMAC.

El 15 de mayo de 2023, el foro primario notificó una *Sentencia*, en la cual declaró *Ha Lugar* la demanda, por lo que, declaró roto y disuelto el vínculo matrimonial.[4]  En cuanto a las menores, dispuso que la petición de patria potestad y las relaciones paternofiliales serían referido a la Unidad de Trabajo Social para su estudio social y recomendación.

Luego de varios trámites procesales, el 25 de noviembre de 2025, la Sra. Marisabel Sénquiz Sánchez, Trabajadora Social de la Unidad de Relaciones de Familia y Asuntos de Menores presentó una *Moción Informativa de Informe de Evaluación Psicológica de las Partes*.[5]

El 26 de noviembre de 2025, el foro primario notificó una *Orden*.  En esencia, concedió a las partes 20 días, contados a partir de la fecha de notificación de la orden, para que se expresaran sobre el *Informe Social*.[6]  Asimismo, señaló que transcurrido dicho término, sin que hayan presentado oposición alguna, acogería el mismo como uno final.

Posteriormente, el 26 de diciembre de 2025, el foro primario notificó una *Resolución*.[7]  En esta, señaló que el 23 de diciembre de 2026, el señor Cosme presentó su posición referente al *Informe Social*, mientras que la señora Sandoval no replicó dentro del término provisto. Así pues, determinó que al no identificar elementos que impidieran acoger las recomendaciones del *Informe* en su totalidad, acogió las mismas y dispuso lo siguiente:

> 1. Se le ordena al Sr. Richard Cosme Díaz continuar recibiendo los servicios psicológicos para el manejo de indicadores emocionales y rasgos de la personalidad

---

[4] *Sentencia*, entrada núm. 50 en SUMAC.
[5] *Moción Informativa de Informe de Evaluación Psicológica de las Partes*, entrada núm. 216 en SUMAC.
[6] *Orden*, entrada núm. 217 en SUMAC.
[7] *Resolución*, entrada núm. 222 en SUMAC.

identificados en el Informe de Evaluación Psicológica realizado por la Clínica de Diagnóstico del Poder Judicial.

2. Se le ordena a la Sra. Melanie Sandoval de Jesús continuar recibiendo servicios psicológicos para el manejo de indicadores emocionales y rasgos de la personalidad identificados en el Informe de Evaluación Psicológica realizado por la Clínica de Diagnósticos del Poder Judicial.

3. Se les ordena a ambos progenitores a realizar un proceso de terapia psicoeducativa y de coparentalidad para mejorar el proceso de comunicación entre los dos y desarrollar destrezas para compartir los roles con respecto a la crianza de sus hijas, según recomendado en el Informe de Evaluación Psicológica de la Clínica de Diagnóstico y Tratamiento del Poder Judicial.

4. Se ordena que las menores continúen recibiendo servicios de terapia psicológica para el manejo de los indicadores emocionales identificados en el Informe de Evaluación Psicológica realizado por la Clínica de Diagnóstico y Tratamiento del Poder Judicial.

5. Se ordena que las menores continúen recibiendo servicios psicológicos y psiquiátricos en Inspira.

6. Se ordena que los progenitores eviten involucrar a las menores en las situaciones de los adultos o que les ofrezcan información relacionada al caso. Dicha conducta puede incidir en maltrato, bajo las providencias de la Ley 57-2023, según enmendada.

7. La persona custodia y otros, evitarán hablar de forma despectiva del otro progenitor con las menores o delante de estas. Se apercibe a su vez, que dicha conducta puede incidir en maltrato, bajo las máximas de la Ley 57, antes citada.

8. Se ordena a que el padre pueda iniciar la comunicación telefónica con las menores, a través de un proceso terapéutico supervisado por un profesional de la conducta, según recomendado en el Informe Social Forense presentado por la trabajadora social Sylkia Rodríguez, el 29 de noviembre de 2024.

Finalmente, indicó que de ser necesaria una vista de impugnación de Informe, las partes debían solicitar

la calendarización de esta en un informe con antelación a juicio.

En desacuerdo, el 30 de diciembre de 2025, la peticionaria presentó una *Moción de Reconsideración*.[8] Alegó que, no estaba de acuerdo con una de las recomendaciones, debido a que, había presentado el 4 de abril de 2025, una impugnación de informe, y dicha impugnación estaba señalada para vista el 2 de febrero de 2026. Resaltó que, las menores no se podían relacionar con el recurrido, ya que hubo maltrato del padre hacia las menores. Por lo que, arguyó que permitir las relaciones hacía académica y dejaría sin efecto la vista de impugnación.

El 7 de enero de 2026, el foro primario notificó una *Resolución Interlocutoria*.[9] Mediante la cual, determinó que la vista de impugnación estaba supeditada a que se remitiera el *Informe Social Final*, el cual se realizó el 25 de noviembre de 2025. Asimismo, dispuso que el recurrido replicó el mismo dentro del término ordenado, mientras que la peticionaria no lo hizo. Añadió, que la fecha pautada era para una posible vista de impugnación de informe, toda vez el mismo fuera finiquitado y las partes hubieran tenido los 20 días para replicar sus disposiciones.

Aún en desacuerdo, el 15 de enero de 2026, la señora Sandoval presentó una *Moción Solicitando Reconsideración a Resolución Interlocutoria*.[10] Sostuvo que, su incumplimiento con el término para replicar el *Informe Social* se debió a razones médicas. Por lo que, no

---

[8] *Moción de Reconsideración*, entrada núm. 223 en SUMAC.
[9] *Resolución Interlocutoria*, entrada núm. 224 en SUMAC.
[10] *Moción Solicitando Reconsideración a Resolución Interlocutoria*, entrada núm. 225 en SUMAC.

demostró abandono procesal ni menosprecio al Tribunal. Resaltó que, la *Resolución* del 31 de diciembre de 2025, adoptó una posición excesivamente restrictiva, al concluir que la falta de réplica la privó automáticamente de su derecho a impugnar las recomendaciones periciales que no habían sido sometidas al rigor de un contrainterrogatorio.

Por su parte, el 24 de febrero de 2026, el señor Cosme presentó una *Moción en Oposición a Moción de Reconsideración*.[11] En síntesis, solicitó se denegara la moción de reconsideración, toda vez que las mociones de Reconsideraciones, se fundamentaban en la misma cuestión de hechos y derechos que el tribunal ya resolvió.

El 26 de febrero de 2026, el foro recurrido notificó una *Resolución Interlocutoria*, en la cual declaró *No Ha Lugar* a la moción de reconsideración instada por la peticionaria.[12]

Aun inconforme, el 23 de marzo de 2026, la peticionaria presentó ante nos el *Recurso de Certiorari*, mediante el cual formuló los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al dejar sin efecto la vista de impugnación del informe social y declarar No Ha Lugar la impugnación presentada, basándose exclusivamente en la falta de réplica dentro del término de veinte días, a pesar de existir una moción formal de impugnación de informe presentada oportunamente y señalada para vista en los méritos.
>
> Erró el Tribunal de Primera Instancia al acoger en su totalidad las recomendaciones del Informe Social y ordenar el inicio de comunicación telefónica terapéutica entre el padre y las menores sin celebrar vista evidenciaria y sin ponderar adecuadamente la prueba de alegado maltrato físico y sexual recogida en el informe de CIMVAS y en las declaraciones de las menores, de la madre y de la abuela materna.

---

[11] *Moción en Oposición a Moción de Reconsideración*, entrada núm. 231 en SUMAC.
[12] *Resolución Interlocutoria*, entrada núm. 232 en SUMAC.

Erró el Tribunal de Primera Instancia al interpretar de forma rígida y desproporcionada los términos procesales relativos a la réplica del informe social, en un caso de protección de menores, con el efecto práctico de dejar sin foro la impugnación sustantiva del informe y de vaciar de contenido la vista señalada, en contravención al debido proceso de ley y al principio del mejor bienestar y seguridad de los menores.

Erró el Tribunal de Primera Instancia al privilegiar la celeridad procesal sobre la obligación de asegurar un proceso justo y completo en asuntos que involucran alegaciones serias de maltrato y abuso infantil, obviando que en este tipo de casos la flexibilidad procesal y la amplitud probatoria son esenciales para salvaguardar los derechos fundamentales de los menores.

El 25 de marzo de 2026, emitimos una *Resolución* en la cual le concedimos a la parte recurrida el término de quince (15) días, contados a partir de la fecha de presentación del recurso, para que se expresara.

El 7 de abril de 2026, el señor Cosme presentó su *Alegato de la Parte Recurrida*. En esencia, esbozó que ni el remedio ni la disposición de la decisión recurrida eran contrarios a derecho y no había mediado prejuicio, parcialidad ni error craso y manifiesto por parte del foro primario. Por lo tanto, solicitó fuera denegado el recurso de epígrafe.

A continuación, con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

**II.**

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía revise discrecionalmente las órdenes o resoluciones interlocutorias emitidas por un tribunal de menor jerarquía. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 195 (2023); *McNeil Healthcare v. Mun. Las Piedras I,* 206 DPR 391, 403 (2021). La característica distintiva del recurso de

*certiorari* descansa en la discreción encomendada a este Tribunal de Apelaciones para autorizar su expedición y adjudicar sus méritos. *Íd.* De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *BPPR v. SLG Gómez-López,* 213 DPR 314 (2023). No obstante, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd.*

Ahora bien, en los procesos civiles, los preceptos que regulan la expedición de un auto de *certiorari* se encuentran fundamentados en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 207-208. La precitada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." Asimismo, y a manera de excepción, se podrá expedir este auto discrecional cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia. *Íd.*

El examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. *800 Ponce de León v. AIG,* 205 DPR 163 (2020). Para ello, la Regla 40 del Reglamento del Tribunal de Apelaciones, según

enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*, los cuales son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los criterios previamente transcritos pautan el ejercicio sabio y prudente de la facultad discrecional judicial. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación." *Scotiabank v. ZAF Corp. et al.,* supra, págs. 486-487; *Mun. De Caguas v. JRO Construction,* supra.

## III.

En el caso de autos, la señora Sandoval presentó cuatro (4) señalamientos de error. En el primer señalamiento alega que incidió el foro primario al dejar sin efecto la vista de impugnación del *Informe Social*.

Mientras que, en su segundo, tercer y cuarto error, por estar relacionados se discuten de manera conjunta. En esencia, impugna la suficiencia y el alcance de las recomendaciones del *Informe Social*.

Examinado el recurso ante nuestra consideración, así como los documentos que obran en el expediente, determinamos denegar la expedición del presente recurso de *Certiorari*.

De un análisis del tracto procesal, revela que varios de los señalamientos de error van dirigidos contra los méritos sustantivos de la *Resolución* notificada el 29 de diciembre de 2025. No obstante, dicha determinación no fue objeto de un recurso de revisión oportuno, por lo cual, este Foro carece de jurisdicción para evaluar tales señalamientos.

En cuanto a la *Resolución* notificada el 31 de enero de 2026, que atendió la controversia sobre la vista de impugnación, no se desprende que el foro primario haya incurrido en un abuso de discreción o error de derecho. Por consiguiente, al no cumplirse con los requisitos de la Regla 52.1 de Procedimiento Civil, *supra*, nos abstenemos de intervenir con esta Resolución.

**IV.**

Por los fundamentos antes expuestos, **DENEGAMOS** expedir el recurso discrecional de epígrafe.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones